1 JOHN S. KAPLAN (WSBA No. 23788)  The Honorable Whitman L. Holt
2 BRYAN T. GLOVER (WSBA No. 51045)  Chapter 9
  BRANDON E. LIRA
3 *Pro Hac Vice Application Pending*
4 STOEL RIVES LLP
  600 University Street, Suite 3600
5 Seattle, WA 98101
  Telephone: (206) 624-0900
6 Facsimile: (206) 386-7500
7 Email: john.kaplan@stoel.com
8         bryan.glover@stoel.com
          brandon.lira@stoel.com
9
10 *Attorneys for Debtor*

11         UNITED STATES BANKRUPTCY COURT
           EASTERN DISTRICT OF WASHINGTON
12                YAKIMA DIVISION

13 In re:                          | Case No. 25-01128-9
14 CITY OF CLE ELUM,               |
                                   | DECLARATION OF MATTHEW
15                Debtor.          | LUNDH IN SUPPORT OF CLE
                                   | ELUM'S PETITION FOR RELIEF
16                                 | UNDER CHAPTER 9 OF THE
                                   | BANKRUPTCY CODE
17

18     I, Matthew Lundh, hereby declare as follows:

19     1.      I am the duly elected Mayor of the City of Cle Elum (the "City").

20     2.      Prior to my public service as the City's Mayor, I served on its City

21 Council for four years and on the City's Planning Commission for approximately

22 two years before acceding to my role as a Councilmember.

23     3.      The City operates under a Mayor-Council form of government

24 pursuant to which the elected Mayor serves as the City's chief executive and

25 administrative officer while an elected seven-member council serves as the City's

26 legislative body.

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

1     4.     The Mayor's Office is located in City Hall at 119 West First Street,

2 Cle Elum, WA 98922.

3     5.     The Mayor of the City, without limitation, fulfills the following

4 functions and discharges the following responsibilities:

5     a.   oversees all departments and employees and possesses the

6     authority to designate department heads subject to Council

7     concurrence;

8     b.   represents the City on ceremonial occasions;

9     c.   presides over meetings of the Council;

10     d.   periodically reports to the Council concerning the City's

11     financial affairs and other needs;

12     e.   periodically prepares and submits to the Council a budget for

13     the City;

14     f.   resolves tied measures and votes of the Council;

15     g.   vetoes ordinances passed by the Council, subject to being

16     overridden by a supermajority of five Council members; and

17     h.   oversees all major projects undertaken by the City, including

18     the City Heights Project (hereinafter defined).

19     6.     In my capacity as Mayor, I duly carry out the preceding functions

20 together with other responsibilities as may be necessary from time to time for the

21 benefit of the City and its citizens.

22     7.     I also delegate from time-to-time certain functions to other senior

23 officials of the City who assist me with respect to the completion of such delegated

24 tasks, including without limitation, the following persons:

25     a.   Robert Omans, City Administrator;

26     b.   Mathew Bailey, Director of Public Works;

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 2

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900
129214477.5 0083426-00001

1               c. Robin Newcomb, Director of Finance;

2               d. Jane Agar, City Librarian;

3               e. Richard Albo, Chief of Police; and

4               f. Edwin Mills, Fire Chief (collectively, the "<u>Senior Officials</u>").

5       8. Completing these responsibilities either independently or in

6 conjunction with my Senior Officials has made me knowledgeable about the City's

7 day-to-day operations, financial affairs, and books and records. Except as

8 otherwise indicated, the statements set forth in this Declaration are based upon my

9 personal knowledge, information provided by other members of the City's

10 management team and advisors, my review of relevant documents and information

11 concerning the City's operations, financial affairs, and restructuring initiatives, or

12 my opinions based upon my experience and knowledge.

13       9. I am over 18 years of age and vested with all due authority to make

14 this Declaration on behalf of the City. If called as a witness, I could and would

15 testify competently to the facts set forth in this Declaration.

16 <u>FORMATION OF THE CITY AND DESCRIPTION OF ITS COMMUNITY</u>

17       10. The City was founded by incorporating itself under the laws of the

18 State of Washington (the "<u>State</u>") on February 12, 1902.

19       11. The City is currently a "optional municipal code city" subject to RCW

20 Chapter 35A, and it has acceded to that status since at least 2010.

21       12. The City also constitutes a "taxing district" as that phrase is used in

22 Wash. Rev. Code Ann. § 39.64.020.

23       13. The City together with its inhabitants, its principal assets, and its

24 boundaries are each in Kittitas County, Washington.

25       14. Kittitas County is a semi-rural county located approximately one to

26 two hours from nearby metropolitan areas such as Seattle, Washington.

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 3

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*
129214477.5 0083426-00001

1    15.    The City had a population of approximately 2,265 inhabitants as of
2    April 1, 2024 per the annual estimation of the Washington State Office of
3    Financial Management, and its population has not significantly changed since that
4    time.

5    16.    Only two newspapers are published in Kittitas County: (1) Northern
6    Kittitas County Tribune, which is newspaper local to the City; and (2) The Daily
7    Record, which is located in nearby Ellensburg, Washington (the "Local Papers").

8    17.    For purposes of the City and Kittitas County generally, the Local
9    Papers are newspapers of general circulation to the extent that they are widely
10   available at newsstands in Kittitas County and available for subscription-based
11   delivery.

12   18.    To the best of my knowledge and belief formed after an inquiry which
13   is reasonable under the circumstances, the Local Papers are widely distributed in
14   the local community and have a combined readership of approximately 9,000,
15   which is significantly higher than the City's local population.

16                    RECENT FINANCIAL PERFORMANCE OF THE CITY
17                       AND OVERVIEW OF ITS CAPITAL STRUCTURE

18   19.    The City's expenditures are financed primarily through the revenues
19   generated by various taxes imposed upon certain activities within the City.

20   20.    These revenues are then held in various funds according to applicable
21   law, which in some cases are restricted by law from use other than the purposes for
22   which they were raised and earmarked (known as "enterprise funds").

23   21.    For the current fiscal year, the City is maintaining approximately 20
24   such funds for various purposes, and these funds had beginning balances ranging
25   from zero dollars to approximately $1,207,000.00.

26

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 4

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

1    22.    As of the execution of this Declaration, the City held monies totaling

2    approximately $319,562.69 for which the use is unrestricted (the "General Fund").

3    23.    The General Fund is funded largely by real property taxes and

4    supports the City's essential services such as its Police Department, Fire

5    Department, operations, maintenance, engineering, and urban planning.

6    24.    Although the City outperformed its financial projections for Fiscal

7    Year 2023, this ostensible "overperformance" is almost entirely traceable to a sum

8    received from its liability insurance carrier, Washington Cities Insurance Authority

9    ("WCIA"), in relation to certain litigation over the City Heights Project

10   (hereinafter defined) and which fund has been nearly exhausted in defending the

11   arbitration and post-award litigation with City Heights Holdings, LLC ("CHH").

12   25.    Moreover, despite its conservative planning, the City has since fallen

13   on harder times for various reasons, chiefly on account of instability in the broader

14   macroeconomic environment together with increases in the costs of providing

15   essential services which are outstripping concomitant increases in tax revenue.

16   26.    The City's expenditures exceeded its revenues by approximately

17   $2,960,848.00 for Fiscal Year 2024, and the City's projections for Fiscal Year

18   2025 anticipate a further shortfall of approximately $333,113.00 across all funds

19   prior to any payments being made in relation to the failed City Heights Project

20   (hereinafter defined).  True and accurate copies of the City's Budgets for Fiscal

21   Years 2023 through 2025 are attached hereto as **Exhibits A through C**.

22   27.    The City has filed with its petition a *List of Creditors Who Have the*

23   *20 Largest Unsecured Claims and Are Not Insiders*, which shows that the City's

24   unsecured debt obligations total an amount not less than $2,181,841.27 without

25   inclusion of the debt arising under the CHH Judgment (hereinafter defined).

26

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 5

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

1       28.     The City also has various debts secured by security interests in its

2 assets, the largest of which are owed to (a) Columbia Banking System, Inc.,

3 successor by merger to Umpqua Holdings Corp. (the "Umpqua Bond");

4 (b) Washington State Department of Commerce (the "State Construction Loan");

5 (c) Santander Bank, N.A. (the "Equipment Loan"); and (d) N C Machinery Co.

6 (the "CAT Loan").[1]

7       29.     The Umpqua Bond arises from that certain *Water and Sewer Revenue*

8 *Funding Bond, 2018* in the original principal amount of $2,800,000.00, which the

9 City authorized in 2018 pursuant Ordinance No. 1490 in order to refinance certain

10 of the City's then-existing bond obligations to the State.

11       30.     The Umpqua Bond is secured by a statutory lien on the net revenue of

12 the City's water system and the City's sewer system, and the outstanding balance

13 due and owing thereunder is approximately $1,659,000.00.

14       31.     The State Construction Loan arises from that certain *Public Works*

15 *Board Construction Loan Contract* in the original principal amount of

16 $2,841,810.00, which the City undertook in order to fund the planning, acquisition,

17 construction, repair, reconstruction, replacement, rehabilitation, or improvement of

18 streets, roads, bridges, drinking water systems, stormwater systems, sanitary

19 sewage systems, or solid waste facilities, including recycling facilities.

20

21 _____

22 [1] The statements made in reference to the City's debts throughout this Declaration

23 are intended to be descriptive and, as such, shall not be deemed an admission as to

24 the validity of any debt asserted against the City, the perfection of any security

25 interest against an asset of the City, or a waiver of any defenses to payment the

26 City may possess.

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 6

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1       32.    The State Construction Loan is secured by a statutory lien on the net

2 revenue of the City's water system, and the outstanding balance due and owing

3 thereunder is approximately $2,692,241.05.

4       33.    The Equipment Loan arises from certain financial accommodations

5 extended to the City by Santander Bank, N.A. in connection with the City's lease-

6 to-own acquisition of a specially engineered truck necessary to the maintenance of

7 the City's sewer system from Vactor, Inc. (the "Vactor Truck").

8       34.    The Equipment Loan is secured by a security interest against the

9 Vactor Truck, and the outstanding balance due and owing thereunder is

10 approximately $398,060.88.

11       35.    The CAT Loan arises from certain financial accommodations

12 extended to the City by N C Machinery Co. in connection with the City's purchase

13 of a Caterpillar 950 Wheel Loader (the "Loader").

14       36.    The Equipment Loan is secured by a security interest against the

15 Loader, and the outstanding balance due and owing thereunder is approximately

16 $143,811.01.

17              THE CITY HEIGHTS PROJECT AND RELATED LITIGATION

18       37.    In 1995, the State adopted Wash. Rev. Code Ann. § 36.70B.170,

19 thereby permitting its municipalities to contract with developers to address

20 escalating housing needs in local communities through agreed development

21 standards, as set forth in the statute.

22       38.    The City has successfully exercised this discretion by contracting with

23 third parties to develop certain parcels of land in the City.

24       39.    In 2011, the City again exercised its discretion to enter into a

25 development agreement (the "Development Agreement") to develop a master

26 planned community over a multi-phase, 25-year buildout comprised of 962

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 7

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

129214477.5 0083426-00001

1  homesites on a 358-acre property in the City, which would be named City Heights

2  (the "City Heights Project").

3         40.    The Development Agreement included an approved Master Site Plan

4  governing the layout of the project (the "Master Site Plan").

5         41.    The Master Site Plan, among other things, addressed land use, type

6  and density of housing, road standards, transportation mitigation, public trails and

7  parks, stormwater, wildlife habitat, and critical areas within and surrounding the

8  City Heights Project.

9         42.    Together, the Development Agreement and the Master Site Plan

10  spelled out a clear vision for the City Heights Project, affording its developer a

11  well-defined roadmap for the City Heights Project and the expectations related

12  thereto.

13        43.    The Development Agreement was executed and delivered to the City

14  by a development group (the "Ridge Entities") which proved to be a recalcitrant

15  and financially unstable partner to the City which to date has not substantially

16  completed its obligations to the City and its inhabitants under the Development

17  Agreement.

18        44.    To rectify their financial condition and avoid foreclosure, the Ridge

19  Entities transferred their interests in City Heights to their lender under a deed in

20  lieu of foreclosure (the "Deeded Interests"), effectively abandoning the City

21  Heights Project.

22        45.    After City Heights had sat dormant for approximately eight years, the

23  Ridge Entities' principal, Sean Northrup ("Northrup"), formed a new entity called

24  UKC Capital, LLC ("UKC").

25

26

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 8

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

1   46.    Northrup thereafter caused UKC first to repurchase the Deeded

2   Interests for approximately $2.45 million and then to transfer those repurchased

3   Deeded Interests to CHH in 2019.

4   47.    CHH became the operative owner and developer of City Heights by

5   virtue of the preceding transactions, and CHH assured the City that it wished to

6   perform under the Development Agreement and to cause an orderly completion of

7   the City Heights Project in accordance therewith.

8   48.    CHH had not hired a project manager or engineer, did not know what

9   it wanted to build, and had not finalized any of its plans or engineering.

10  49.    Approximately one year later, CHH submitted a proposed but

11  incomplete development plan for the first phase of the City Heights Project.

12  50.    CHH revised its development plan twice thereafter, and the City

13  accepted as substantially complete its third proposal (the "Phase I Proposal").

14  51.    Like the Ridge Entities which preceded it, CHH's finances also

15  quickly destabilized to the point that, upon information and belief, CHH (i) lacked

16  sufficient working capital to continue developing City Heights by the end of 2020

17  (*i.e.*, only months after submitting the Phase I Proposal) and (ii) failed or refused to

18  secure within a reasonable time substitute financial accommodations for it to

19  continue performing under the Development Agreement.

20  52.    Notwithstanding the fact that the City was cooperating with the

21  submittal process and prepared to agree to certain modifications to the Phase I

22  Proposal, CHH filed three arbitration demands against the City concerning the

23  Development Agreement and the City Heights Project (the "City Heights

24  Litigation").

25  53.    CHH's regulatory violations have at times prompted the involvement

26  of certain environmental agencies of the State, including the Washington State

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 9

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

129214477.5 0083426-00001

25-01128-WLH9    Doc 12    Filed 06/27/25    Entered 06/27/25 17:56:40    Pg 9 of 21

1  Department of Natural Resources ("DNR") and the Washington Department of

2  Ecology ("DE"), for CHH's violations of applicable environmental law.

3      54.    CHH's litigious nature coupled with its failure to comport with the

4  dickered terms of the Development Agreement have made a challenging

5  partnership even more strained.

6      55.    CHH's litigation tactics have also resulted in an arbitration award

7  against the City in the total amount of $22,230,175 (the "Arbitration Award").

8      56.    The King County Superior Court entered a judgment against the City

9  and in favor of CHH in the amount of the Arbitration Award on December 9, 2024.

10 This judgment was modified to add attorneys' fees and additional accrued interest,

11 resulting in a total judgment against the City in the amount of $25,997,198.38 as of

12 May 12, 2025, which continues to accrue in interest at the rate of 12% per annum.

13 (as amended and/or modified, the "CHH Judgment").

14     57.    Based on its accrual of interest at the rate of twelve percent (12%) per

15 annum and other fees allowable by law, the CHH Judgment exceeds $26 million

16 dollars as of the execution of this Declaration.

17     58.    Among other deleterious effects, the Arbitration Award has seriously

18 undermined the City's creditworthiness and curtailed its access to credit facilities.

19     59.    The Arbitration Award also has rendered the City insolvent to the

20 extent that the Arbitration Award is larger than the amount of money held in all of

21 the City's funds (including non-discretionary funds).  The City lacks capacity to

22 even service the monthly interest on the CHH Judgment of approximately

23 $230,000 per month.

24     60.    Even in the absence of the Arbitration Award, the City does not have

25 any material budgetary surpluses because the City's operating budget barely covers

26 the costs of operating the city and providing essential services to residents.

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 10

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900
129214477.5.0083426-00001
25-01128-WLH9    Doc 12    Filed 06/27/25    Entered 06/27/25 17:56:40    Pg 10 of 21

1       61.    The Arbitration Award is also larger than the debt limit applicable to

2  the City under the laws of this State even if credit facilities were readily available

3  to the City.

4       62.    Because the City cannot pay the Arbitration Award from its available

5  resources and the City is prohibited by law from obtaining loans sufficient to repay

6  that award, the City is unable to pay its debts as they come due.

7       63.    For these reasons, the financial condition of the City is such that it is

8  insolvent as that term is defined in the Bankruptcy Code.

9                  <u>THE STATUS OF CITY HEIGHTS</u>

10      64.    Although a portion of the first phase of development has been

11  completed, upon information and belief, CHH cannot complete the City Heights

12  Project in accordance with and by the timeline required by the Development

13  Agreement.

14      65.    CHH has completed approximately 10 houses to date despite

15  obtaining all final approvals which are necessary for the construction of at least 59

16  homes to be built during the first phase of construction.

17      66.    Put slightly different, CHH has completed about 1% of the homes it is

18  obligated to build pursuant to the Development Agreement over about 60% of the

19  time – 14 years – it has been allocated to complete *all* homes comprising the City

20  Heights Project.

21      67.    The City has worked in good faith to support further development of

22  City Heights, including by voluntarily extending 20 of CHH's building permits.

23      68.    At this time, the City Heights project is in disarray:

24              a.   Phase I was the subject of arbitration but proceeded with final

25                    plat approval and construction.  Of 59 houses approved for

26                    construction in Phase I, only 10 have been built.  The City has

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 11

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1  worked in good faith to support further development, including

2  voluntarily extending 20 building permits.

3  b. Phase II was also the subject of arbitration. The preliminary

4  plat was approved for 65 lots. CHH applied for final plat

5  approval, and the application was denied, due in part to lack of

6  required secondary access and a potable water system. CHH

7  did not appeal the denial.

8  c. Phase III received preliminary plat approval for 145 lots subject

9  to construction of required water infrastructure. CHH has yet to

10  address permitting and compliance requirements to support

11  water infrastructure for development. Unless and until the

12  water infrastructure is addressed by CHH, Phase III cannot

13  proceed.

14  d. Phase IV was submitted to the City for preliminary plat

15  approval. The submission was lacking, and the City sought

16  additional information from CHH.

17  69.    In sum, the City Heights Project was intended to fuel the City's

18  growth but has become a financial albatross for the City.

19  70.    CHH has neither provided the City plans nor shown its ability to

20  substantially—let alone fully—complete City Heights in accordance with the

21  Development Agreement.

22  THE CITY HAS STRIVEN TO RESOLVE ITS DISPUTES WITH CHH

23  71.    The City expected the same success with City Heights over its 25-year

24  buildout as the City had achieved with prior development agreements, such as a

25  neighboring development known as Cle Elum Pines.

26

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 12

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900
129214477.5 0083426-00001

25-01128-WLH9    Doc 12    Filed 06/27/25    Entered 06/27/25 17:56:40    Pg 12 of 21

72.     Instead, the City unknowingly contracted with a litigious partner that has embroiled the City in years of disputes and failed to substantially complete its obligations to the City.

73.     Notwithstanding the foregoing, the City sought to settle its disputes with CHH before and during the arbitration proceedings previously described.

74.     When the City's efforts to resolve the litigation failed and the Arbitration Award and the CHH Judgment were thereafter entered, the City held meetings to, among other things, discuss the wherewithal and overall financial condition of the City, consult its financial and legal advisors regarding the liabilities and liquidity of the City, and analyze the impact of the Arbitration Award and the CHH Judgment to its finances.

75.     The City held a special meeting on December 19, 2024, at which it considered the option of seeking relief under the Bankruptcy Code before tabling that discussion in the hope that the City could resolve its disputes with CHH in a manner which would not bankrupt the City.

76.     The City and its legal counsel thereafter worked in earnest to negotiate a good faith compromise of the CHH Judgment that devotes the reasonably available resources of the City without substantially and unreasonably cutting the essential services it provides to the citizens of Cle Elum.

77.     Despite tendering multiple offers for CHH's consideration that, among other things, entailed substantial cash payments, provided for the liquidation of certain property, and allocated substantial portions of future tax increases to repaying the Judgment, CHH has failed or refused to accept the City's reasonable repayment terms and has chosen instead to persist in demanding a level and pace of repayment to which the City cannot accede based on its presently

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*
129214477.5 0083426-00001

1 available tax base and any reasonably workable increases to its present rates of
2 taxation.

3      78.    Still wishing to compromise the CHH Judgment without the necessity
4 of bankruptcy relief notwithstanding CHH's unreasonable demands, the City
5 sought to mediate the parties' disputes.

6      79.    CHH initially refused to mediate (or conditioned CHH's participation
7 on conditions that were either impossible or imprudent for the City to meet) before
8 later agreeing to mediate in exchange for partial payment of the CHH Judgment of
9 $50,000.

10      80.    In-person mediation sessions were thereafter held on March 24, 2025,
11 April 17, 2025, and June 16, 2025, and the mediator, Alan D. Smith of Perkins
12 Coie LLP, has remained in communication with the parties in between and since
13 those sessions. These mediation sessions were at significant expense to the City,
14 draining the City's already limited resources.

15      81.    Notwithstanding the ongoing mediation, CHH caused on May 28,
16 2025, writs of garnishment to issue to three financial institutions with whom the
17 City either banks or has other financial dealings (the "CHH Garnishments")
18 without notice to the City's counsel of record in the King County Superior Court
19 proceedings.

20      82.    The City learned of the CHH Garnishments when it received them by
21 mail on June 9, 2025, whereupon the City immediately reached out to its counsel
22 for guidance and advice.

23      83.    Despite the efforts of the City's counsel to get CHH to withdraw the
24 CHH Garnishments so that the mediation could resume, CHH has failed or refused
25 to withdraw the CHH Garnishments.

26

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 14

1     84.     The CHH Garnishments have significantly inconvenienced the City,

2 put further pressure on its already strained resources, and caused unnecessary

3 confusion between and among the City, its employees, and its vendors.

4     85.     Under these circumstances and with CHH refusing to withdraw the

5 garnishments while the parties conduct further settlement discussions, further

6 negotiations are impractical.

7     86.     Prior to and especially during the June 16, 2025 session, the City's

8 offers stretched far greater than the City believes it would need to in Chapter 9

9 because the City hoped to avoid bankruptcy and its costs and the associated

10 negative reputational and credit issues.  However, CHH did not accept the City's

11 final offer prior to the June 20 deadline set by the City in order to get a settlement

12 on the agenda for a June 23 City Council meeting.

13     87.     It is not the City's fault that CHH claims to lack any financial

14 resources. The Arbitration award was based on lost profits from 143 lots; damages

15 were based on a speculative lost profits analysis based on a projected 70 lot sales

16 without homes and 73 lots with homes; CHH still has most or all of those units and

17 can sell them despite already being awarded a judgment for lost profits from their

18 sale.  Without taking into account the double-counting included in the judgment, if

19 the profits from 143 lots should have been approximately $20 million, then profits

20 on 962 units can be extrapolated to at least $130 million.  And yet, CHH claims to

21 have no funds to comply with its responsibilities to the City.

22     88.     CHH has left piles of downed trees and nature debris, commonly

23 known as "slash piles", in several locations on its property. The fire department

24 deems these to be a danger to the City, especially during wild-fire season when

25 piles of dried and decomposing natural debris could both start and exacerbate a fire

26

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 15

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900
129214477.5.0083426-00001

1  incident, especially in a location heavily wooded such as the locations surrounding

2  the piles of debris. These kinds of debris piles are a violation of City code.

3       89.    Additionally, CHH is required by its final plat approval to install

4  certain pieces of infrastructure or provide a bond in lieu of construction. CHH

5  chose to bond for the construction, but has yet to take any material steps to begin

6  construction. Accordingly, the City may have to go through the onerous and costly

7  process of calling on the bond such that residents that have purchased homes or

8  will purchase homes have required infrastructure.

9       90.    CHH appears to be funded solely by one partner, Trailside Group,

10  Inc., asking another partner, Copper Leaf LLC (owned by Rodger May) for high-

11  interest loans. I am informed that in the Fall of 2024, Mr. May spent more than

12  $25 million in cash buying back certain assets of Peter Pan Seafood Company,

13  LLC, an entity he controlled, out of receivership in King County Superior Court.

14  Despite having access to plenty of money and, according to their calculations that

15  led to the outsized CHH Judgment, plenty of profit opportunity, CHH has proven

16  to be a bad development partner for our citizens.

17                 AUTHORIZATION AND PURPOSE OF THE PROCEEDING

18       91.    Based on the unreasonableness of CHH's demands and so that its

19  special counsel would be able to prosecute a petition for relief under Chapter 9 of

20  the Bankruptcy Code in the event that such action became necessary, the City

21  adopted Resolution No. 2025-006 (the "Bankruptcy Resolution"). A true and

22  accurate copy of the Bankruptcy Resolution is attached hereto as **Exhibit D**.

23       92.    The Bankruptcy Resolution complies in all respects with RCW

24  §§ 39.64.040 and 39.64.050, thereby satisfying the State's requirements for the

25  City to seek relief under the Bankruptcy Code.

26

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900
129214477.5 0083426-00001

1        93.    The Bankruptcy Resolution, among other things, authorizes me to

2    commence the Case in the name and on behalf of the City and to undertake

3    reasonable and necessary actions in furtherance of such proceeding in consultation

4    with the City's special counsel, Stoel Rives LLP, designated to represent the City

5    in connection with this Case.

6        94.    As described herein, the CHH Judgment has left the City's finances in

7    a parlous state, and its deteriorating financial condition will only worsen as (a) the

8    CHH Judgment continues to accrue interest and other costs allowance by law and

9    (b) CHH continues its efforts to enforce that judgment against the City.

10        95.    Unfortunately, despite good faith efforts by the City to negotiate with

11    its creditors (where such negotiations could be had), no reasonable alternative for

12    the restructuring of the City's operations and obligations exists other than through

13    this Case.

14        96.    The City thus desires to effect a plan to adjust its debt and has filed

15    this Case in furtherance of that goal in order to secure for itself and its citizens an

16    opportunity to effect real and lasting change to the City's financial condition.

17                              FIRST-DAY PLEADINGS

18        97.    To preserve the City's ability to function efficiently within Chapter 9

19    and provide uninterrupted services to its citizens, several pleadings (the "First-Day

20    Pleadings") designed to achieve a seamless transition into chapter 9 have been

21    filed contemporaneously with this Declaration. Generally, the First-Day Pleadings

22    seek: (a) to establish procedures for the smooth and efficient administration of this

23    chapter 9 case; (b) ensure that the City receives the benefit of certain protections

24    afforded under the Bankruptcy Code; and (c) lay the groundwork for a successful

25    adjustment of the City's liabilities.

26

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900
129214477.5 0083426-00001

1   98.   The relief sought in each of the First-Day Pleadings is tailored to meet

2   the City's previously described goals and promote the City's ability to confirm a

3   plan of adjustment.

4   99.   I have reviewed each of the First-Day Pleadings with the City's

5   special counsel and request that all of the relief requested in the First-Day

6   Pleadings be granted along with such other relief as is just and proper.

7   100.   The City has filed a Motion for Entry of an Order (1) Approving

8   Proposed Form of Notice of the Commencement of this Case; (2) Setting a

9   Deadline for Objections to the Petition; (3) Establishing a Claims Bar Date;

10  (4) Setting a Deadline for Filing Plan; and (5) Granting Related Relief (the "Case

11  Administration Motion").

12  101.   In consultation with the City's special counsel, the Case

13  Administration Motion has been carefully drafted in order to provide notice of the

14  commencement of this Case to interested parties and afford those parties a

15  meaningful opportunity to assert their rights while also addressing any eligibility

16  questions or other concerns about this Case in general.

17  102.   The proposed deadlines and underlying procedures set forth in the

18  Case Administration Motion have been crafted in an effort to balance the City's

19  need to proceed with an orderly and efficient adjustment of its debts with the right

20  of interested parties to be heard by the Court.

21  103.   The establishment of some of these deadlines also serves to eliminate

22  the uncertainty created by the absence of an express timing provision in the

23  Bankruptcy Code or Bankruptcy Rules for raising certain matters in Chapter 9

24  cases.

25  104.   Furthermore, the City's proposed "Notice of Commencement" has

26  been carefully drafted in order to provide adequate information to interested parties

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 18

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*
129214477.5 0083426-00001

25-01128-WLH9    Doc 12    Filed 06/27/25    Entered 06/27/25 17:56:40    Pg 18 of 21

1  about this Case's most significant events and deadlines in plain, readily

2  comprehensible language.

3      105.   The City has filed a Motion for Entry of an Order Appointing Stretto,

4  Inc. ("Stretto") as Its Claim, Notice, and Solicitation Agent *Nunc Pro Tunc* (the

5  "Claims' Agent Motion").

6      106.   In consultation with the City's special counsel, the City determined

7  that effectuating proper service and completing other administrative tasks would

8  place unreasonably heavy administrative burdens on the Court and its Clerk's

9  Office based on the number of creditors and interested parties affected by this

10 Case.

11     107.   In order to assuage that burden, the City seeks entry of an order

12 appointing Stretto as the City's claims, notice, and solicitation agent in order to,

13 among other things, (a) serve as the Court's agent to mail notices to creditors of the

14 City and other parties in interest (including notice of the commencement of the

15 case) pursuant to 28 U.S.C. § 156(c); (b) provide computerized claim and objection

16 database services; and (c) provide expertise, consultation, and assistance in claims

17 process and with other administrative tasks.

18     108.   The City's proposed engagement of Stretto shall be at the City's sole

19 expense pursuant to 28 U.S.C. § 156(c), and Stretto was selected in consultation

20 with the City's special counsel for its expertise in, efficiency with, and knowledge

21 of complex bankruptcy matters.

22     109.   In further support of the Claims' Agent Motion, the City has

23 submitted the Declaration of Sheryl Betance.

24 *//*

25

26

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 19

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900
129214477.5.0083426-00001

1    I certify under penalty of perjury that the foregoing is true and correct.

2    SIGNED this 27th day of June, 2025, at Cle Elum, Washington.

3

4                              CITY OF CLE ELUM

5                              By: _____

6                                  Matthew Lundh
                                   Mayor
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF MATTHEW LUNDH IN SUPPORT OF CLE ELUM'S PETITION - 20

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206-624-0900

129214477.5.0083426-00001

25-01128-WLH9    Doc 12    Filed 06/27/25    Entered 06/27/25 17:56:40    Pg 20 of 21

# CERTIFICATE OF SERVICE

1

2   The undersigned hereby certifies that on the date listed below, I caused to be

3   electronically filed the foregoing document with the Clerk of the Court using the

4   CM/ECF system, which will in turn automatically generate a Notice of Electronic

5   Filing to all parties in the case who are registered users of the CM/ECF system.

6   The Notice of Electronic Filing specifically identifies the recipients of electronic

7   notice.

8   DATED:  June 27, 2025

9                                        STOEL RIVES LLP

10

11                                       */s/ John S. Kaplan*
                                         _____

12                                       John S. Kaplan, WSBA No. 23788
                                         600 University Street, Suite 3600

13                                       Seattle, WA 98101
                                         Telephone: (206) 624-0900

14                                       Facsimile: (206) 386-7500
                                         Email:  john.kaplan@stoel.com

15

16                                       *Attorneys for Debtor*

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206-624-0900

129214477.5 0083426-00001